UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**TAMARLY DANIER,**

    **Plaintiff,**

v.                                              **CASE NO.: 22-cv-22811-RKA**

**DELOITTE CONSULTING, LLP,[1]**

    **Defendant.**

_____/

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Tamarly Danier, pursuant to Fed.R.Civ.P. 15(a)(1)(B), respectfully files this First Amended Complaint against Defendant, Deloitte Consulting LLP, and in support of her claims states as follows:

**JURISDICTION AND VENUE**

1. This is an action for damages for violations of 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*.

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e *et seq*.

3. Venue is proper in the Southern District of Florida, because all of the events giving rise to these claims occurred in Dade County, Florida.

**PARTIES**

4. Plaintiff is a resident of Dade County, Florida.

---

[1] According to Defendant, "[a]t all times material hereto, Plaintiff was employed by Deloitte Consulting LLP. Accordingly, Deloitte Consulting LLP is the proper Defendant." Thus, in this Amended Complaint Plaintiff has named the correct Deloitte-related entity as the Defendant.

5. Defendant operates a consulting firm in Miami (Dade County), Florida.

## GENERAL ALLEGATIONS

6. Plaintiff has satisfied all conditions precedent, or they have been waived.

7. Plaintiff has hired the undersigned attorneys and agreed to pay them a fee.

8. Plaintiff requests a jury trial for all issues so triable.

9. Plaintiff is a member of a protected class of persons under Section 1981.

10. Plaintiff is an employee whose rights to contract for employment, and enjoy the benefits of employment, are protected under Section 1981.

11. Under Section 1981, Defendant is an employer prohibited from interfering with any employee's contractual right to enjoy the same benefits, privileges, terms, and conditions of employment that all other employees of Defendant otherwise enjoy, regardless of the employee's race and/or color.

12. At all times material hereto, Defendant acted with malice and reckless disregard for Plaintiff's protected rights under Section 1981.

13. At all times material hereto, Plaintiff was an employee of Defendant within the meaning of Title VII.

14. At all times material hereto, Defendant employed fifteen (15) or more employees. Thus, Defendant is an "employer" within the meaning of Title VII.

## SUPPORTING FACTS AS TO PLAINTIFF'S CLAIM FOR RACE DISCRIMINATION

### *Plaintiff is in a Protected Class*

15. Plaintiff is a Black, African American Female.

16. Plaintiff began working for Defendant as a Senior Consultant on February 1, 2021, and she worked in this capacity until December 17, 2021.

### *Plaintiff was qualified for her position*

17. Plaintiff was personally recruited to work for Defendant due to her success in the industry. Prior to working for Defendant, Plaintiff ran a successful business in this field.

18. Plaintiff is considered a Subject Matter Expert in her field with years of experience.

19. During Plaintiff's tenure with Defendant, she received three (3) bonuses for the "value" she brought to Defendant.

### *Plaintiff Suffered Adverse Employment Action*

**Race discrimination based on work assignments by Defendant**

20. Plaintiff immediately noticed work assignments were distributed by Defendant in a discriminatory manner based on race.

21. In fact, upon starting employment with Defendant, Plaintiff was given assignments below her skill and expertise level while individuals outside of her protected class, including Nena Lara (a non-African American female), and Khloe Baptista (a non-African American female) were given more desirable work assignments because of their race.

22. Plaintiff was removed from assignments because she did not conform to the "Culture" of Defendant's workplace. Plaintiff opposed the discriminatory treatment she was experiencing and spoke up about it, thus she was removed as punishment for not acquiescing.

23. Employee's promotions, bonuses, and raises are predicated upon the work that they produce while on projects, thus being removed or not assigned to projects would impact an employee's compensation.

24. Plaintiff was assigned to the "Google" project and immediately noticed issues with the project. When Plaintiff raised these issues, made suggestions on how to correct the issues, or asked questions, she was ignored by the Project Manager, Dan Pariseau.

25. When Plaintiff raised the discriminatory treatment with Defendant, specifically, Managing Partner Jeffery Wordham, she continued to experience bullying and harassment from Defendant.

26. Plaintiff was removed from the Google project based on her opposition to the discriminatory treatment she received from the Project Manager.

27. Plaintiff's contributions to the Google project, and other project were minimized and unnecessarily questioned because she was an African American female.

28. For example, on the Rainbow project, the work of Nena Lara, and Khole Baptista, were not scrutinized in the same manner as Plaintiff's. Plaintiff was asked to contribute above and beyond what her peers were required to contribute on projects.

29. Plaintiff was then assigned to the "Flowserve" project with Project Manager, Francisco "Sco" Peschiera. Mr. Peschiera continued to single Plaintiff out from her peers and required more from her than the other non-African American team members. When Plaintiff opposed the treatment she received, Mr. Peschiera became upset and removed her from this project.

30. Subsequent to being removed from the Flowserve project, Plaintiff met with Mr. Wordham and complained to him that she was being bullied, singled out, and treated differently because of her race.

31. Mr. Wordham took no remedial action and allowed the Project Manager, Mr. Peschiera to purpurate the false narrative that Plaintiff was a "difficult black woman" who is unwilling to adapt to the culture of the workplace.

32. Defendant subsequently stopped assigning Plaintiff to projects. During the period of September 10, 2021, to December 17, 2021, Plaintiff was not assigned any projects.

33. Nena Lara (a non-African American female), and Khloe Baptista (a non-African American female) were given more desirable work assignments because of their race.

34. Defendant then used this as a pretextual reason for termination, alleging that Plaintiff "decided to stop working".

### Race discrimination based on discipline by Defendant

35. As justification for removing Plaintiff from the Flowserve project, Mr. Peschiera drafted an email to Mr. Wordham with false accusations of Plaintiff's conduct while on the project. Plaintiff and Mr. Peschiera are both working remotely therefore all of their interactions, to include any request, work completed, etc. would have been electronically recorded. Yet, Defendant did nothing to verify the accusations against Plaintiff, and allowed her to be removed from the project without cause.

36. During Plaintiff's involvement with the Google project and the Flowserve project, Plaintiff pointed out to Mr. Wordham the falsehoods that were used to take disciplinary actions against her, by the Project Managers, yet at no point did Defendant conduct any sort of investigation, formal or informal, to substantiate the claims against Plaintiff.

37. The disciplinary decisions (removing Plaintiff from Projects) were not enforced in an evenhanded manner but, rather, based on race.

### Race discrimination based on Plaintiff's discharge

38. Defendant's decision to terminate Plaintiff was based solely on her race. Prior to termination Plaintiff was singled out due to her race and for her opposition to adapt to the "culture" of the office.

39. A false narrative was painted by Defendant's Project Managers of Plaintiff being "aggressive" "uncooperative" and "unadaptable" when she opposed being treated poorly because of her race.

40. Defendant took no remedial action when Plaintiff complained about the discriminatory treatment. Defendant took no steps to verify or substantiate the claims of the Project Managers, rather Defendant used the false narrative as a justification to stop assigning Plaintiff projects, and to ultimately terminate her because of her race and because she engaged in protected activity, as explained further below.

### *Similarly Situated Employees Were Treated More Favorably*

41. Defendant held itself out as a company that had a strong diversity and inclusion initiative, yet Plaintiff was the only African American among Defendant's nearly one hundred and twenty (120) employees.

42. Plaintiff was being used as a token of diversity by Defendant, rather than for her skills and talent. Plaintiff was asked to provide headshot photos that were used for at least three projects and/or project pitches that Plaintiff had nothing to do with and would not be assigned.

43. Plaintiff would ask to review the pitches where her headshot would be used, but she was never allowed to do so.

44. Nena Lara (a non-African American female), and Khloe Baptista (a non-African American female) were given more desirable work assignments because of their race.

45. While on the Google project, Ms. Lara and Ms. Baptista's work was not scrutinized in the same manner as Plaintiff's. For example, Plaintiff was publicly called out and ridiculed when a bullet point was misaligned in a group PowerPoint slide.

46. The allegations of Project Managers, Dan Pariseau (a non-African American male), and Francisco Peschiera (a non-African American male) were not subjected to questioning, doubt, or validation by Defendant, yet Plaintiff's assertion of discriminatory treatment was downplayed and not taken seriously.

47. Employees Nena Lara, Khloe Baptista, Dan Pariseau and Francisco Peschiera were all assigned to or contributors of the projects that Plaintiff was assigned; thus, these employees would have been expected to be subject to the same rules and policies regarding production and contribution as Plaintiff.

48. Employees Nena Lara, Khloe Baptista, Dan Pariseau, Francisco Peschiera, and Plaintiff were subordinate to Mr. Jeffery Wordham and would have been under his supervision and control, yet the discrimination that Plaintiff experienced in the form of work assignments, treatment, discipline, and discharge were not enforced in an evenhanded manner but, rather, based on race.

## SUPPORTING FACTS AS TO PLAINTIFF'S CLAIM FOR RETALIATION

### *Plaintiff Engaged in Protected Activity*

49. On multiple occasions, Plaintiff met with and sent emails to Mr. Jeffery Wordham to complain about the discriminatory treatment she received from Dan Pariseau and Francisco Peschiera.

50. On or about September 13, 2021, Plaintiff again complained to Mr. Wordham about the discrimination she was experiencing. During that call Mr. Wordham tells Plaintiff that he is "hearing things that makes him uncomfortable". Mr. Wordham then contacted Human Resources, (also referred to as "Talent Sourcing").

51. Plaintiff was contacted by Human Resources (HR) on or about September 14, 2021, to discuss Plaintiff's complaints.

52. Plaintiff was advised by HR on September 22, 2021, and September 30, 2021, that a verbal and written complaint was officially filed, stemming from her complaints to Mr. Wordham. An HR investigator, Janet Black, was assigned to investigate Plaintiff's claims of discrimination.

53. On approximately September 22, 2021, Plaintiff provided Ms. Black with a detailed timeline of events, online chats, and emails to substantiate her complaints of racially discriminatory treatment.

54. On or about October 4, 2021, while the HR investigation is pending, Plaintiff again met with Mr. Wordham and complained again about the racially discriminatory treatment to which she was being subjected by members of Defendant's management, including Dan Pariseau and Francisco Peschiera. Plaintiff also objected to the fact that Defendant's Human Resources was doing little or no real investigation into her allegations or racial discrimination.

55. At that time Plaintiff asked Mr. Wordham for an independent 3rd party investigation into her complaints of race discrimination. No such investigation was done.

56. Plaintiff learned a short time later that no investigation was actually conducted by HR. When Plaintiff questioned the HR investigator about the legitimacy of the investigation and asked for a file or reference number for the complaints, Plaintiff was told that filing complaints about race discrimination in the manner in which Plaintiff filed was "futile", and that she just needed to move forward.

### *Plaintiff Suffered an Adverse Employment Action*

57. Plaintiff's work assignments were distributed by Defendant in a discriminatory manner based on race. Plaintiff was given assignments below her skill and expertise level while individuals outside of her protected class, were given more desirable work assignments because of their race.

58. Plaintiff was removed from at least two projects based on her race and because she engaged in protected activity. At least two of Defendant's Project Managers removed Plaintiff from projects after she complained about discriminatory treatment.

59. Defendant subsequently stopped assigning Plaintiff to projects. During the period of September 10, 2021, to December 17, 2021, Plaintiff was not assigned any projects. Defendant then used this as a pretextual reason for termination, alleging that Plaintiff "decided to stop working".

60. On or about December 17, 2021, Defendant terminated Plaintiff because of Plaintiff's race and in retaliation for her opposition of the discriminatory treatment she endured.

### *Plaintiff's Adverse Employment Action is Casually Related to Her Protected Activity*

61. Defendant discriminated against Plaintiff due to her race, failed to take remedial action when Plaintiff complained about the discrimination, and retaliated against her after she engaged in protected activity by terminating her employment.

62. On multiple occasions throughout Plaintiff's tenure with Defendant, Plaintiff met with and sent emails to Managing Partner, Jeffery Wordham, to complain about the discriminatory treatment she received.

63. On or about September 13, 2021, Plaintiff again complained to Mr. Wordham about the discrimination she was experiencing. During that call Mr. Wordham tells Plaintiff that he is

"hearing things that makes him uncomfortable". Mr. Wordham then contacted Human Resources, (also referred to as "Talent Sourcing").

64. Human Resources allegedly started an investigation in response to Plaintiff complaints of discrimination, on September 14, 2021, by assigning Investigator, Janet Black., Ms. Black confirmed on September 22, 2021, and September 30, 2021, that official complaints were filed.

65. On or about October 4, 2021, while the HR investigation is pending, Plaintiff again met with Mr. Wordham and complained again that the racial discrimination to which she was being subjected. She also conveyed her concerns about the lack on investigation that was being done by HR. At that time Plaintiff asked Mr. Wordham for an independent 3rd party investigation into her complaints of race discrimination. No such investigation was done.

66. On or about December 17, 2021, Defendant terminated Plaintiff solely because of Plaintiff's race and in retaliation to her opposing the discriminatory treatment she endured.

## COUNT I –42 U.S.C. § 1981 VIOLATION
### (RACE DISCRIMINATION)

67. Plaintiff realleges and readopts the allegations of Paragraphs 1 through 12, and 15 through 47 of this Complaint as though fully set forth herein.

68. Plaintiff is a member of a protected class of persons under Section 1981.

69. Plaintiff was subjected to disparate treatment by Defendant based solely on Plaintiff's race.

70. The foregoing actions constitute unlawful discrimination in violation of Section 1981.

71. Defendant's actions were willful and done with malice.

72. As a direct and proximate result of Defendant's willful and reckless discrimination against Plaintiff, Plaintiff has suffered and will continue to experience pain and suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

73. Plaintiff was injured due to Defendant's violations of Section 1981, for which Plaintiff is entitled to legal and injunctive relief.

WHEREFORE, Plaintiff demands:

    (a)    A jury trial on all issues so triable;

    (b)    That process issue and that this Court take jurisdiction over the case;

    (c)    Judgment against Defendant, permanently enjoining Defendant from future violations of Section 1981, and remedying all lost income, raises, promotions, and other benefits of which Plaintiff was unlawfully deprived;

    (d)    Compensatory damages, including emotional distress, allowable at law;

    (e)    Punitive damages;

    (f)    Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

    (g)    Prejudgment interest on all monetary recovery obtained;

    (h)    All costs and attorney's fees incurred in prosecuting these claims; and

    (i)    For such further relief as this Court deems just and equitable.

## COUNT II — 42 U.S.C. § 1981 VIOLATION
### (RETALIATION)

74. Plaintiff realleges and readopts the allegations of Paragraphs 48 through 65 of this Complaint as though fully set forth herein.

75. Plaintiff is a member of a protected class of persons under Section 1981.

76. By filing a complaint with Defendant about the racist treatment she received, Plaintiff engaged in protected activity under Section 1981.

77. Defendant retaliated against Plaintiff for engaging in protected activity under Section 1981 by terminating her employment.

78. Defendant's actions were willful and done with malice.

79. Defendant's retaliation was based solely on Plaintiff's exercise of her right to resist and oppose unlawful discrimination and harassment, which is protected under Section 1981.

80. As a direct and proximate result of Defendant's willful and reckless discrimination against Plaintiff, Plaintiff has suffered and will continue to experience pain and suffering, mental anguish, emotional distress, and loss of earnings and other employment benefits and job opportunities.

81. Plaintiff was injured due to Defendant's violations of Section 1981 for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

(a) A jury trial on all issues so triable;

(b) That process issue and that this Court take jurisdiction over the case;

(c) Judgment against Defendant, permanently enjoining Defendant from future violations of Section 1981, and remedying all lost income, raises, promotions, and other benefits of which Plaintiff was unlawfully deprived;

(d) Compensatory damages, including emotional distress, allowable at law;

(e) Punitive damages;

(f) Reinstatement of Plaintiff to a position comparable to her prior position, or in the alternative, front pay;

 (g) Prejudgment interest on all monetary recovery obtained;

 (h) All costs and attorney's fees incurred in prosecuting these claims; and

 (i) For such further relief as this Court deems just and equitable.

## COUNT III – TITLE VII VIOLATION
### (DISCRIMINATION)

82. Plaintiff realleges and readopts the allegations of paragraphs 1 through 8, and 14 through 47 of this Complaint, as though fully set forth herein.

83. Plaintiff is a member of a protected class under Title VII.

84. Plaintiff was subjected to disparate treatment on the basis of her race. Defendant failed to take remedial action when Plaintiff complained about the discrimination and retaliated against her by terminating her after she engaged in protected activity.

85. Defendant's actions were willful and done with malice.

86. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

*WHEREFORE*, Plaintiff demands:

 a) A jury trial on all issues so triable;

 b) That process issue and that this Court take jurisdiction over the case;

 c) An injunction restraining continued violation of Title VII by Defendant;

 d) Compensation for lost wages, benefits, and other remuneration;

 e) Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, or in the alternative, front pay;

 f) Any other compensatory damages, including emotional distress, allowable at law;

 g) Punitive damages;

      h)      Prejudgment interest on all monetary recovery obtained.

      i)      All costs and attorney's fees incurred in prosecuting these claims; and

      j)      For such further relief as this Court deems just and equitable.

## COUNT IV – TITLE VII RETALIATION

87. Plaintiff realleges and readopts the allegations of paragraphs 48 through 65 of this Complaint as though fully set forth herein.

88. Plaintiff is a member of a protected class under Title VII.

89. Plaintiff exercised or attempted to exercise her rights under Title VII by reporting the racial harassment to Defendant, thereby engaging in protected activity under Title VII.

90. Defendant failed to take remedial action when Plaintiff complained about the discrimination and retaliated against her by terminating her after she engaged in protected activity

91. Defendant's actions were willful and done with malice.

92. In terminating Plaintiff's employment, Defendant took material adverse action against Plaintiff.

93. Plaintiff was injured due to Defendant's violations of Title VII, for which Plaintiff is entitled to legal and injunctive relief.

    **WHEREFORE**, Plaintiff demands:

      a)      A jury trial on all issues so triable;

      b)      That process issue and that this Court take jurisdiction over the case;

      c)      That this Court enter a declaratory judgment, stating that Defendant retaliated against Plaintiff for exercising her rights under Title VII;

      d)      That this Court enter an injunction restraining continued violation of Title VII by Defendant;

e)   Compensation for lost wages, benefits, and other remuneration;

f)   Reinstatement of Plaintiff to a position comparable to Plaintiff's prior position, with back pay plus interest, pension rights, seniority rights, and all fringe benefits;

g)   Front pay;

h)   Any other compensatory damages, including emotional distress, allowable at law;

i)   Punitive damages;

j)   Prejudgment interest on all monetary recovery obtained.

k)   All costs and attorney's fees incurred in prosecuting these claims; and

l)   For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands trial by jury as to all issues so triable.

Dated this 3rd day of November, 2022.

Respectfully submitted,

*/s/ Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 0037061
Direct Dial: 813-337-7992
**AFRICA F. ALTIDOR**
Florida Bar Number: 124595
Direct Dial: 813-321-4085
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: bhill@wfclaw.com
Email: aaltidor@wfclaw.com
Email: aketelsen@wfclaw.com
**Attorneys for Plaintiff**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 3rd day of November, 2022, the foregoing was electronically filed with the Clerk of Court via the CM/ECF system, which will send notice to the following:

Marlene Quintana
Fabian A. Ruiz
GRAYROBINSON, P.A.
333 SE 2nd Avenue, Suite 3200
Miami, Florida 33131
Telephone (305) 416-6880
Facsimile  (305) 416-6887
Email: Marlene.quintana@gray-robinson.com
Email: Fabian.ruiz@gray-robinson.com

                                    */s/ Brandon J. Hill*
                                    **BRANDON J. HILL**